**U.S. BANKRUPTCY COURT**

**District of South Carolina**

Case Number:  **08-08404-hb**

Adversary Proceeding Number:  **10-80047-hb**

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 21 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/30/2012**



US Bankruptcy Judge

District of South Carolina

Entered: 03/30/2012

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Timothy Carl Kain and Ruth Mulfinger Kain,<br><br>Debtor(s). | C/A No. 08-08404-HB<br><br>Adv. Pro. No. 10-80047-HB<br><br>Chapter 13 |
| Timothy Carl Kain<br>Ruth Mulfinger Kain,<br><br>Plaintiff(s),<br><br>v.<br><br>Bank of New York Mellon, f/k/a Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-16<br>Bank Of America NA<br>BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing LP<br>Colorado Federal Savings Bank<br>CWABS, Inc.<br>Countrywide Home Loans, Inc.<br>Mortgage Electronic Registration Systems, Inc.,<br><br>Defendant(s). | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

Defendant Bank of New York, f/k/a Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-16 ("Claimant") filed a claim in the  Chapter 13 bankruptcy case of Debtors Timothy Carl Kain and Ruth Mulfinger Kain ("Plaintiffs").  Plaintiffs contest the validity of the claim in this adversary proceeding and assert additional cause for affirmative relief.

Claimant and Plaintiffs agree that Defendants Countrywide Home Loans, Inc., Bank of America NA f/k/a Countrywide Home Loans Servicing LP, BAC Home Loans

Servicing LP, CWABS, Inc., and Mortgage Electronic Registration Systems, Inc., have no further interest in this matter because they did not file claims in the bankruptcy case—an act which is the backbone of Plaintiffs' remaining claims.[1]   Defendant Colorado Federal Savings Bank ("CFSB") is no longer a party to this action.[2]

Before the Court are cross Motions for Summary Judgment[3] and responses thereto[4] filed by the parties pursuant to Fed. R. Civ. P. 56, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.  The remaining issues raised in this adversary and the cross Motions fall into two categories:

1) **Plaintiffs' Objections to Claim:** Claimant attached a note and mortgage to its claim, but those documents did not list Claimant as the payee or mortgagee and Plaintiffs assert that the attached documents are inadequate to establish Claimant's interest.  Plaintiffs argue that Claimant cannot make a claim for or enforce that note and mortgage.  Plaintiffs contend that the note is non-negotiable under the UCC as a matter of law; therefore, the note was not properly transferred to Claimant, and Claimant cannot be a holder of the note.  Alternatively, Plaintiffs argue that if the note is negotiable, the record and applicable law still indicate that Claimant is not the holder and, therefore, lacks standing to assert the claim.  In addition, Plaintiffs allege that there are inadequacies in documents that are necessary for Claimant to establish its interest (i.e., a trust agreement and/or the Pooling and Servicing

---

[1] All remaining Defendants were represented at the hearing by counsel, Janet B. Haigler of the Finkel Law Firm, LLC.  John R. Cantrell, Jr. of Cantrell Legal, P.C. represents Plaintiffs in their bankruptcy case and this adversary proceeding.

[2] *See* Doc. No. 127, entered Aug. 10, 2011 (consent order voluntarily dismissing all causes of action against Defendant CFSB and Third Party Defendant Jacquelyn J. Lanier).  This Order also included a voluntary dismissal with prejudice of Plaintiffs' TILA Rescissions issues with the consent of all parties.

[3] Defs.' Mot. for Summ. J. & Mem. in Supp. (Doc. No. 170, filed Dec. 15, 2011); Pls.' Mot. for Summ. J. (Doc. No. 171, filed Dec. 15, 2011); Pls.' Br. in Supp. (Doc. No. 188, filed Feb. 10, 2012).

[4] Defs.' Obj. to Pls.' Mot. for Summ. J. (Doc. No. 178, filed Dec. 28, 2011); Pls.' Obj. to Defs.' Mot. for Summ. J. (Doc. No. 186, filed Feb. 6, 2012).

Agreement ("PSA")[5] and an assignment of the mortgage), rendering Claimant's interest unenforceable. Finally, Plaintiffs object to the amounts listed in the claim. Claimant refutes each of these arguments, contending that it is the holder of a negotiable note with standing to assert the claim secured by a mortgage. Claimant also asserts that the amount set forth in the claim is correct.

2) **Plaintiffs' Requests for Affirmative Relief**: Plaintiffs allege that the claim is inadequate, false and/or fraudulent, includes improper fees and charges, and argue that Claimant has violated the automatic stay of 11 U.S.C. § 362(a)(3) and (4)[6], requesting relief as a result. Plaintiffs also assert that they may use the lien avoidance powers found in § 544 to avoid any security interest held by Claimant, rendering its claimed collateral free and clear of any lien held by any of the Defendants.[7] In response, Claimant argues that the record does not include sufficient evidence to support these claims and that as a matter of law judgment should be entered in Claimant's favor.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and Local Civil Rule 83.IX.01, DSC. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5]*See In re Smoak*, 461 B.R. 510, 515 (Bankr. S.D. Ohio 2011) ("[A PSA] is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents were transferred by and between the parties to the trust, and sets forth various responsibilities of the parties to the trust. The promissory notes, mortgages or deeds of trust, and related loan documents are the trust res. Through the securitization process, the beneficial or ownership interests in the trust are held by investors.").

[6] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.*, will be by section number only.

[7] *See* Defs.' Mem. (Doc. No. 170 at 19-20) (pointing out that Pls.' Am. Compl. also cites §549, *see Doc.* No. 8 at 8, ¶ 52).

## I. SUMMARY OF FACTS

An Interest Only Adjustable Rate Note in the amount of $166,500.00 was executed by Timothy Carl Kain in favor of CFSB on October 25, 2005 ("Note"), listing property located at 5 Starsdale Circle, Greenville County, South Carolina as security for the Note. The Note provides for an initial fixed yearly interest rate that eventually changes to an adjustable rate. It also includes information for determining the adjustable rate of interest, a right to prepay, and attaches a Prepayment Addendum.[8]   Both Plaintiffs executed a Mortgage in favor of CFSB intended to secure the Note ("Mortgage"). The Mortgage was recorded in the Office of Clerk of Court for Greenville County on October 31, 2005, in Book 4460, Page 729.[9]   Mr. Kain admitted that he owes the debt obligation under the Note.[10]

Plaintiffs defaulted on the Note and Mortgage.[11]   In 2007, Claimant initiated a foreclosure action in state court in Greenville County, South Carolina that was dismissed under Rule 41(a).[12]   An Assignment of Mortgage executed by Mortgage Electronic Registration Systems, Inc., as nominee for CFSB, to Claimant ("Assignment of Mortgage"), was recorded in the Office of Clerk of Court for Greenville County on January 2, 2008, in Book 4902, Page 1655.   Thereafter, Claimant initiated a second foreclosure action on August 6, 2008.[13]

On December 30, 2008, Plaintiffs filed a voluntary petition for Chapter 13 relief,[14] which stayed Claimant's foreclosure action.  On February 10, 2009, Claimant filed a secured

---

[8] *See* POC 9-1, C/A No. 08-08404-hb, filed Feb. 10, 2009.
[9] *Id.*
[10] Doc. No. 184 at 62, ln.14-16.
[11] *Id.* at 54, ln. 12-14 (admitting a payment delinquency).
[12] *See* C/A No. 2007-CP-23-8202.
[13] *See* C/A No. 2008-CP-23-5931.
[14] Doc. No. 1, C/A No. 08-08404-hb.

claim ("POC") in the amount of $182,323.36, with an itemized arrearage claim of $16,011.70.[15]   The POC attached copies of the Mortgage as well as the Assignment of Mortgage.[16]   The POC also attached a copy of the Note without any indorsements. However, Claimant has since produced and attached to its Motion a complete copy of the original Note, which includes indorsements and indicates that Claimant is in possession of the original Note indorsed in BLANK.[17]

Plaintiffs' Chapter 13 plan was confirmed on February 4, 2010.[18]  Plaintiffs initiated this adversary proceeding on April 7, 2010.[19]

---

[15] POC 9-1, C/A No. 08-08404-hb. The arrearage claim is calculated through January 31, 2009, and attached an itemization of the amounts included therein. Plaintiffs have not disputed the appropriateness of the calculation date. Additionally, Plaintiffs have not articulated any factual inaccuracies in the amount of the claim. Rather, Plaintiffs argue that Claimant should be held to its burden of proof and that certain fees and costs should not be included; however, they have not highlighted any evidence obtained from which the Court could find that the amounts stated are not factually accurate.

[16] *See* Or. Mot. Den. Mot. for Sancts. (Doc. No. 194 at 3, entered Feb. 17, 2012) (finding at an evidentiary hearing on the matter that any differences between the copy of the Assignment of Mortgage filed with Claimant's POC and the original Assignment of Mortgage, which was introduced into evidence at the hearing, *see* Doc. No. 192, were not material and were more likely than not caused by "varying ink colors and qualities, and from the process of imaging or copying.").

[17] Doc. No. 170, Ex. C-3 (copy of the Note with indorsements); *id.* at Ex. C-4 (copy of the Mortgage); *id.* at Ex. C-5 (copy of Assignment of Mortgage, which is also a part of the Court's records, *see supra* note 16); Doc. No. 8 at 4-5, ¶¶ 28-32; at 8, ¶ 50 (Plaintiffs' Amended Complaint wherein Plaintiffs acknowledged and identified the PSA. Plaintiffs also relied on the PSA's content and listed the website where it can be found as a public document on file with the SEC). In the Amended Complaint and a Motion *in Limine* filed earlier in the case, Plaintiffs asserted, pursuant to certain equitable theories, that the Court should limit its consideration to only Claimant's POC and the attached documents. *See* Doc. No. 8; *see also* Pls.' Mot. *in Limine* (Doc. No. 138, filed Aug. 19, 2011); Pls.' Br. in Supp. Mot. *in Limine* (Doc. No. 147, filed Sept. 21, 2011); Or. on Mot. *in Limine* (Doc. No. 157, entered Sept. 26, 2011). However, these assertions were not sufficiently supported at the summary judgment stage by citing to the record or presenting applicable case law.

[18] Doc. No. 49, C/A No. 08-08404-hb. The Court's records indicate that Plaintiffs listed the debt in question on their Schedule F as an unsecured nonpriority claim held by Countrywide Home Loans in the amount of $166,220.66 with a notation "10-2005 Rescinded Home Loan." (Doc. No. 1 at 30, C/A No. 08-08404-hb, filed Dec. 30, 2008). Plaintiffs' Statement of Financial Affairs also disclosed a foreclosure action pending in state court captioned *Bank of New York for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-16, 2008-CP-23-5931. Id.* at 40. The proposed plan did not pay the claim as a secured debt. (Doc. No. 10, C/A No. 08-08404-hb, filed Jan 7, 2009). The plan was later amended and confirmed with the following provision:

> Although Countrywide Home Loans claims to be secured, this loan has been rescinded pursuant to TILA and Debtors propose to treat the claim in the plan as unsecured. Countrywide disputes Debtors' treatment of this claim as unsecured; however, in order to allow this plan to be confirmed, so that disbursement to other creditors can begin, both Countrywide and the Debtors agree that the trustee should not disburse on the Countrywide claim at this time, and that all rights as to all issues between the Debtors and Countrywide

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when, after adequate time for discovery, a party has failed to make a 'showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 97 (4th Cir. 2008) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548 (1986)).  Pursuant to Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011).  On summary judgment, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (footnote and citations omitted).

Rule 56 provides the following framework for the parties to support the motion for summary judgment or any challenge thereto:

> (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1) .

---

shall be reserved in spite of the confirmation of the plan, until further order of the Court regarding this claim . . .
Doc. No. 40 at 5-6, ¶ 4(d), C/A No. 08-08404-hb, filed Dec. 8, 2009.  Claimant initially objected to the plan (Doc. No. 18, C/A No. 08-08404-hb, filed Jan 30, 2009), but later reached an agreement with the Plaintiffs and trustee regarding this reservation language.  As stated above, the TILA action was later dismissed. (Doc. No. 127).
[19] Compl. (Doc. No. 1).

If the moving party carries its burden, then the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories or admissions on file that there is a genuine issue of material fact for trial. *Wilson Group, Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 420 (D.S.C. 1995) (citing *Celotex Corp.*, 477 U.S. at 324-25, 106 S. Ct. 2548). "A genuine issue of fact exists when there is sufficient evidence on which a reasonable jury could return a verdict for the non-moving party." *Orgain*, 305 F. App'x at 97. An issue of fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). Therefore, "[m]ere 'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.'" *Bronfman v. O'Hara (In re O'Hara)*, Adv. Pro. No. 09-9055, 2011 WL 1467927, at *6 (Bankr. N.D.N.Y. Apr. 18, 2011) (quoting *Kulak v. City of N.Y. (In re Kulak)*, 88 F.3d 63, 71 (2d Cir. 1996)).

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). If so, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 advisory committee's note. However, "to preclude summary judgment, the non-movant must cite to admissible evidence to show a genuine issue of material fact exists." *Warden v. PHH Mortg. Corp.*, 799 F. Supp. 2d 635, 641 (N.D. W.Va. 2011) (citing Fed. R. Civ. P. 56(c)(2)). "[T]he Court is not obligated to search the record for the non-moving party's evidence." *Capco Energy, Inc. v. Pyramid Gom, Inc. (In re Capco Energy, Inc.)*, Adv. Pro. No. 10-3349, 2012 WL 253140, at *4 (Bankr. S.D. Tex. Jan. 25, 2012).

The non-movant "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. 1348 (footnote and citations omitted). One of the purposes of summary judgment is to determine whether the parties can provide evidentiary support for their version of the facts. If a party has credible evidence for its position, it must make the existence of such evidence known because summary judgment cannot be defeated by the vague hope that something may turn up at trial. *See E. P. Hinkel & Co., Inc. v. Manhattan Co.*, 506 F.2d 201 (D.C. Cir. 1974).

### III. DISCUSSION AND CONCLUSIONS

Discovery in this case has been substantial and lengthy.[20] Claimant presented approximately 300 pages of documents in support of its Motion and its Objection to Plaintiffs' Motion, including an affidavit[21], verified responses to Plaintiffs' discovery requests[22], and deposition testimony.[23] On the other hand, Plaintiffs' Motion and Objection were not accompanied by significant references to the record that would support their case, and did not highlight any genuine dispute of material fact. As discussed below, after a review of the record and applicable law, the Court finds that Claimant has properly supported its Motion and shall be granted summary judgment.[24] Additionally, Plaintiffs' Motion shall be denied.

---

[20] The Court's docket for this adversary proceeding is replete with discovery issues and disputes, resulting in the substantial production of documents from Defendants. In particular, Plaintiffs' Motion to Compel (Doc. No. 101, filed Jul. 14, 2011), in itself resulted in several lengthy hearings and orders issued by this Court. *See* Doc. Nos. 132, 143, 160, 162, 166.

[21] Doc. No. 170, Ex. A.

[22] *Id.* at Ex. B-D.

[23] Doc. Nos. 184 & 189.

[24] Plaintiffs' asserted that the Court could not consider certain exhibits used by Claimant to support its Motion because they are inadmissible. (Doc. No. 186). However, Claimant met its burden of explaining the admissible form of these exhibits under Rule 56 by previously providing Plaintiffs with the name of another individual, Tala Rezai of Bank of America, who could also testify to the relevant facts at trial. Furthermore, the discovery responses used as exhibits by Claimant included signed verifications by employees from the following Defendants: Bank of America, N.A.; CWABS, Inc.; Bank of New York Mellon; and Mortgage Electronic Registration Systems, Inc. (Doc. No. 170, Ex. C at 28-37). These verifications asserted that those individuals

### A. OBJECTIONS TO CLAIM
#### 1. THE NOTE IS NEGOTIABLE

The Court is not persuaded by Plaintiffs' legal challenges to the negotiability of the Note. Plaintiffs question Claimant's right to enforce the Note—and, thus, the validity of the claim—by raising challenges pursuant to the Uniform Commercial Code ("UCC"). The parties agree that at the time of the closing and issuance of the Note and Mortgage, the former version of the UCC, S.C. Code Ann. § 36-1-101 (2003) *et seq.*[25] ("Former Article 3"), was the applicable law and should be applied to the instant action.[26] Former Article 3 governs commercial paper, *see* S.C. Code Ann. § 36-3-101 (2003), which includes a note secured by a mortgage on real property. *Swindler v. Swindler*, 355 S.C. 245, 251, 584 S.E.2d 438, 441 (Ct. App. 2003) ("Thus, even when executed simultaneously with a mortgage, a note remains subject to the provisions of Article 3." (citing *Northwestern Bank v. Neal*, 271 S.C. 544, 546-47, 248 S.E.2d 585, 586 (1987))).

The UCC requires that it "shall be liberally construed and applied to promote its underlying purposes and policies." S.C. Code Ann. § 36-1-101(1) (2003). The underlying purposes and policies of the UCC are: "(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of parties; (c) to make uniform the law among various jurisdictions." S.C. Code Ann. § 36-1-101(2) (2003). The Official Comment to this section emphasizes that the UCC:

---

read the responses to interrogatories and requests for production of documents, including all supplements, and "knows the content to be true of his/her own knowledge, or believes it to be true upon information and belief." *Id.* Therefore, these individuals also should be able to testify at trial to the existence and accuracy of facts found in the discovery responses. Accordingly, there is no indication that the evidence *cannot* be admissible at trial. *See* Fed. R. Civ. P. 52(c)(2). However, reliance on the bulk of these exhibits was not necessary. Specific references to material facts in the record are made in the Summary of Facts. *See supra* at 4-5.

[25] Further reference to the UCC, S.C. Code Ann. § 36-1-101 (2003) *et seq.*, will be by section number only.

[26] *See* Tr. Mot. for Summ. J. Hr'g, Doc. No. 191.

is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. It is intended to make it possible for the law embodied in [the UCC] to be developed by the courts in light of unforeseen and new circumstances and practices.

S.C. Code Ann. § 36-1-102 official comment no. 1 (2003).

Pursuant to Former Article 3, in order for a writing to constitute a negotiable instrument it must meet the following requirements:

(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and
(c) be payable on demand or at a definite time; and
(d) be payable to order or bearer.

S.C. Code Ann. § 36-3-104(1) (2003).

Plaintiffs argue that the inclusion of the right to prepay in the Note and Prepayment Addendum attached thereto constitute additional promises, rendering the Note nonnegotiable under § 36-3-104(1)(b). In *HSBC Bank USA, NA v. Gouda*, C/A No. F-20201-07, 2010 WL 5128666 (N.J. Super. Ct. App. Div. Dec. 17, 2010), the Appellate Division of the Superior Court of New Jersey[27] addressed this exact argument. *Id.* at *3. In rejecting this argument, the *Gouda* court reasoned that:

The right of [borrowers], under the note, to prepay part of the principal does not constitute an "additional undertaking or instruction" that adversely affects the negotiability of the note. Quite the opposite, *the right of prepayment is a voluntary option* that [borrowers] may elect to exercise solely at their discretion. Indeed, such an allowance confers a benefit, not a burden, upon [borrowers], who can freely choose to decline the opportunity. The fact that [borrowers] must notify the lender in the event they opt for prepayment imposes no additional liability on them and is not a condition placed on [borrowers]' promise to pay. Rather, notification is simply a requirement of the exercise of the right of prepayment which, as noted,

---

[27] This court serves as the intermediate appellate court and is equivalent to the South Carolina Court of Appeals. *See About NJ Courts—Appellate Division*, NEW JERSEY COURTS (2012), http://www.judiciary.state.nj.us/appdiv/index.htm.

> [borrowers] are free to reject. *This requirement does not render the note in issue non-negotiable.*

*Id.* (emphasis added). Since *Gouda*, other courts have been persuaded by its reasoning and followed its holding. *See In re Walker*, __ B.R. __, No. 10-12592 ELF, 2012 WL 443014, at *8 (Bankr. E.D. Pa. Feb. 13, 2012) (finding the note to be a negotiable instrument and to not impose an additional obligation, based on the reasoning set forth in *Gouda*); *Picatinny Fed. Credit Union v. Fed. Nat'l Mortg. Assoc.*, C/A No. 09-1295 (GEB), 2011 WL 1337507, at *7 (D.N.J. Apr. 7, 2011) (agreeing with the reasoning set forth in *Gouda* and holding that the note was negotiable).

In addition, the Official Comment to § 36-3-106 states that "[t]he section rejects decisions which have denied negotiability to a note with a term providing for a discount for early payment on the ground that at the time of issue the amount payable was not certain." S.C. Code Ann. § 36-1-106 official comment no. 1 (2003). Furthermore, "[t]he ability of the debtor to avail himself of additional favorable payment options or receive compensation in the event of accounting errors does not destroy the negotiability of the instrument." *Edwards v. Deutsche Bank Nat'l Trust Co. (In re Edwards)*, Adv. No. 11-2505, 2011 WL 6754073, at *5 (Bankr. E.D. Wis. Dec. 23, 2011) (rejecting the argument that certain prepayment terms made the note nonnegotiable because it was no longer an unconditional promise to pay). Since such prepayment terms do not affect the negotiability of a note with regard to it being for a "sum certain" or an "unconditional promise," the Court is not persuaded that the same terms would affect the negotiability of a note on the grounds that it contains an additional promise. Accordingly, the Court finds that the Note at issue sets forth an unconditional

promise to pay[28] and the prepayment language does not constitute or include any additional promise, order, or obligation.

Plaintiffs also argue that the Note is a nonnegotiable instrument because it is an adjustable rate Note, which requires one to look beyond the "four corners" of the Note to determine the sum to be paid.  Therefore, Plaintiffs allege the Note is not for a sum certain. Despite the fact that South Carolina courts have not addressed this issue, looking at Former Article 3 as a whole, the Court does not find that the statute was intended to exclude adjustable rate mortgages from the scope of negotiable instruments.

Former Article 3 does not define the term "sum certain."  However, § 36-3-106 "lists several instances when the sum certain requirement is not defeated even though the amount payable is not explicitly stated in the instrument." *Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 793 (Tex. 1992).  Furthermore, § 36-3-106 specifically states that "[t]he sum payable is a sum certain even though it is to be paid . . . with exchange or less exchange, whether at a fixed rate or at the current rate . . ." S.C. Code Ann. § 36-3-106(1)(d) (2003).

The Official Comment to § 36-3-106 states that the computation of interest "must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest 'at the current rate.'" S.C. Code Ann. § 36-3-106 official comment no. 1 (2003).  However, the language of Former Article 3 contemplated reference to a source outside the four corners of the instrument to determine interest, which did not destroy the negotiability of the document. Section 36-3-118 required that if interest was not specified in the instrument, then "interest

---

[28] *See* S.C. Code Ann. § 36-3-105(1)(c) ("A promise or order otherwise unconditional is not made conditional by the fact that the instrument . . . refers to a separate agreement for rights as to prepayment or acceleration").

means *interest at the judgment rate* at the place of payment from the date of the instrument, or if it is undated from the date of issue." S.C. Code Ann. § 36-3-118(d) (2003) (emphasis added).    This provision applies to every instrument, which is defined as "a negotiable instrument." S.C. Code Ann. § 36-3-102(1)(e) (2003).    It would be an anomaly for an instrument to be negotiable when the parties must look beyond its four corners to the judgment rate to determine interest when it was not defined therein, but for the instrument to be nonnegotiable if interest—defined in the document—required the parties to look to an easily ascertainable published prime rate.[29]

Further, the Court does not find Plaintiffs' strict interpretation of "sum certain" under §§ 36-3-104 and 106 to be consistent with the UCC's objective for commercial uniformity nor does it align with its underlying purposes and policies. *See* S.C. Code Ann. § 36-1-101; *see also Amberboy*, 831 S.W.2d at 796 (stating that an adjustable rate note "which contains [a] provision for interest to be paid at a variable rate that is readily ascertainable by reference to a bank's published prime rate is compatible with the [UCC's] objective of commercial certainty.    The [UCC] does not require 'mathematical certainty' but only 'commercial certainty.'")

Plaintiffs have relied heavily on the South Carolina Reporter's Comment to § 36-3-112 of the amended version of the UCC which states that:

---

[29] The UCC was later amended to define and clarify the meaning of "interest" as:

> (a) Unless otherwise provided in the instrument, (i) an instrument is not payable with interest, and (ii) interest on an interest-bearing instrument is payable from the date of the instrument.
> (b) Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates.    The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument.    If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues.

S.C. Code Ann. § 36-3-112 (Supp. 2010).    The last sentence of subsection (b) replaced former § 36-3-118(d). *See* S.C. Code Ann. § 36-3-112 official comment no. 2 (Supp. 2010).

> Under former Section 36-3-104(1)(b) a writing could qualify as a negotiable
> instrument only if it were an order or promise to pay a "sum certain." Former
> Section 36-3-106(1) defined the term "sum certain." Under that definition, a
> note with a variable interest rate determined by reference to information not
> contained in the note did not provide for payment of a sum certain and could
> not qualify as a negotiable instrument.

S.C. Code Ann. § 36-3-112 S.C. reporter's comment (Supp. 2010). However, the Court

finds the plain language of Former Article 3 and the authorities discussed above more

persuasive than this reporter's comment.[30] The statutory language permitted parties to look

beyond the four corners of a note to determine interest without destroying its negotiability.

Accordingly, the negotiability issue is resolved in favor of Claimant as a matter of law.

### 2. *CLAIMANT IS THE HOLDER OF THE NOTE AND HAS STANDING TO ENFORCE THE NOTE*

Under Former Article 3, the maker of a mortgage note "engaged that he will pay the

instrument according to its tenor at the time of his engagement or as completed . . ." S.C.

Code Ann. § 36-3-403(1) (2003). "The holder of an instrument whether or not he is the

owner may transfer or negotiate it and . . . discharge it or enforce payment in his own

name." S.C. Code Ann. §36-3-301 (2003). A holder of a negotiable instrument is defined as

"a person who is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or

to his order or to bearer or in blank." S.C. Code Ann. § 36-1-201(20) (1976).

Former Article 3 also governs the transfer of negotiable instruments. *Midfirst Bank,

SSB v. C.W. Haynes & Co.,* 893 F. Supp. 1304, 1312 (D.S.C. 1994). When indorsed in

blank, an instrument "becomes payable to the bearer and may be negotiated by delivery

alone." S.C. Code Ann. § 36-3-204(b) (2003). Possession of a bearer instrument is *prima

facie* evidence of ownership. *In re Woodberry,* 383 B.R. 373, 377 (Bankr. D.S.C. 2008); *see*

---

[30] *See* S. 213,119th Gen. Assemb., Reg. Sess. (S.C. 2011) ("In accepting these Reporter's Comments for use
and publication in the manner provided by this act, the General Assembly expresses its thanks to the South
Carolina Bar and its member attorneys for their diligence and professionalism in developing and preparing
these comments.").

*also Talbert v. Talbert,* 97 S.C. 136, 143, 81 S.E. 644, 647 (S.C. 1914) (quoting *Stoddard v.*

*Hill,* 38 S.C. 385, 392, 17 S.E. 138, 140 (1893)).  Further, the possession required by Former

Article 3 "to constitute a person as a 'holder' may be the constructive possession by delivery

to one on his behalf.  Thus, a person is a 'holder' of commercial paper when it is in the

physical possession of his agent." *Midfirst Bank*, 893 F. Supp. at 1314 (quoting 1 Ronald A.

Anderson, *Uniform Commercial Code* § 1-201:106 (3d ed. 1981)).  The owner or holder of a

note has a right to payment. *Woodberry,* 383 B.R. at 378 (citing *Trimble* v. *Carlisle,* 103

S.C. 411, 415, 88 S.E. 28, 29 (1916)).

Under § 36-3-403(1), Claimant is the holder of the Note because there is sufficient

evidence indicating that it is in possession of the original Note indorsed in BLANK.[31]

Consequently, Claimant has standing to enforce the Note and assert its claim.  The Court

also finds that Claimant has standing to enforce the Mortgage.  In addition to the fact that

the Assignment of Mortgage to Claimant is recorded on the public record, "South Carolina

recognizes the 'familiar and uncontroverted proposition' that 'the assignment of a note

secured by a mortgage carries with it an assignment of the mortgage.'" *Midfirst Bank*, 893 F.

Supp. at 1318 (quoting *Hahn v. Smith*, 157 S.C. 157, 154 S.E. 112 (1930)).

Plaintiffs further contend that Claimant is not the holder because the Note was never

negotiated to it.  Their argument is based on the fact that the POC did not attach a copy of

the PSA, which Plaintiffs assert means there is no valid PSA and the Note could not have

been transferred according to its terms.[32]  To support this, Plaintiffs rely on *Doble v.*

*Deutsche Bank Nat'l Trust Co. (In re Doble)*, Adv. Pro. No. 10-90308-MM, 2011 WL

1465559 (Bankr. S.D. Cal. Apr. 14, 2011), where the court allowed a debtor to challenge a

---

[31] *See supra* note 17.
[32] Doc. No. 186 at 6-7.

creditor's standing by asserting that it could not own the loan at issue because the obligation was not properly transferred in accordance with the terms of the PSA and state law. *Id.* at *9.

However, this Court is swayed by recent authority finding that debtors, who are not parties to or third party beneficiaries of a PSA, lack standing to challenge the validity of or noncompliance with terms of a PSA. *See Walker*, 2012 WL 443014 at *9; *see also Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011); *Velasco v. Sec. Nat'l Mort. Co.*, __ F. Supp. 2d __, 2011 WL 4899935, at *9 (D. Haw. Oct. 14, 2011); *Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010), *aff'd* 399 F. App'x 97 (6th Cir. 2010); *Bittinger v. Wells Fargo Bank, NA*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex. 2010); *In re Smoak*, 461 B.R. 510, 519-21 (Bankr. S.D. Ohio 2011); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009).

Further, the Court is not persuaded by Plaintiffs' argument that they must be allowed to challenge the PSA and violations thereof in order to ensure that they pay the proper entity entitled to enforce the Note.[33]

> *Whatever the context*, it appears that a judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, *i.e.*, the PSA.

---

[33] Even if the assignment of the Note to Claimant or the PSA was defective and the original assignor retains ownership rights to the Note, any payments the Plaintiffs would have made to Claimant would discharge their liability under the Note. *See* S.C. Code Ann. § 36-3-603(1) (2003) (subject to certain exceptions not applicable to the instant case, "[t]he liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties.").

*Walker*, 2012 WL 443014 at *9 (emphasis added) (citing *Lindsay v. Am.'s Wholesale Lender*, No. SACV 11-1303-DOC, 2012 WL 83475, at *3 (C.D. Cal. Jan. 10, 2012)).

### 3. THE CLAIM IS ALLOWED

Claimant has met Plaintiffs' challenges to the sufficiency or appropriateness of the POC. The question for the Court to answer is not whether the POC as filed in February 2009 is flawed. Rather, the Court must determine whether the claim represented by that POC should be allowed at the summary judgment stage on the current record. Plaintiffs' lingering suspicions and allegations are not enough to establish a genuine issue of material fact. *See Tuttle v. McHugh*, No. 10-2442, 2011 WL 6118588, at *2 (4th Cir. Dec. 9, 2011) ("Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a 'mere scintilla of evidence' in support of a nonmovant's case suffices to forestall summary judgment." (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002))). After examining the record and considering applicable law, the Court finds that there are no genuine disputes of material fact remaining as to whether the POC should be allowed as filed. Therefore, Claimant is entitled to summary judgment as a matter of law.

### B. REQUESTS FOR AFFIRMATIVE RELIEF
#### 1. 11 U.S.C. § 362 IS INAPPLICABLE

Plaintiffs assert that Claimant indorsed the Note after it was attached to the POC and filed with this Court,[34] alleging that such conduct is in violation of the automatic stay because it was an "act to create, perfect, or enforce any lien against property of the estate."

---

[34] Plaintiffs argue that this is evidenced by the lack of indorsements on the copy of the Note attached to the POC compared to the indorsed Note.

11 U.S.C. § 362(a)(4).[35]   Plaintiffs also assert that such an act violates the stay because it is

an act to "obtain possession of property of the estate or of property from the estate or to

exercise control over property of the estate." 11 U.S.C. § 362(a)(3).   However, the alleged

conduct, if proven, would not amount to a violation of the automatic stay.   "[T]he owner of a

mortgage interest may transfer its interest after the mortgagor files for bankruptcy . . .

[because] the property owner holds only legal title—and not an equitable interest—in the

property that has been mortgaged." *Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561,

568 (6th Cir. 2006) (holding that the attempt by the mortgagee to perfect its interest in the

mortgage after the bankruptcy petition was filed was not a violation of the automatic stay)

(citing *Kapila v. Atl. Mortg. & Invest. Corp. (In re Halabi)*, 184 F.3d 1335, 1337 (11th Cir.

1999)); *see also In re Guillaume*, No. 10-51417-jbr, 2011 WL 5591642, at *1 (Bankr.

E.D.N.Y. Nov. 16, 2011) (finding that an assignment of a mortgage and note does not fall

within the purview of § 362); *In re Canellas*, No. 6:09-bk-12840-ABB, 2010 WL 571808, at

*4 (Bankr. M.D. Fla. Feb. 9, 2010) (holding that "[t]he purported assignment of the Note

and Mortgage . . . does not affect perfection or constitute a transfer of property of the estate

or the Debtor."); *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009) ("The postpetition

assignment of a mortgage and the related note from one holder to another is not a transfer of

property of the estate.   The mortgage and note are assets of the creditor mortgagee, not of

the Debtor.   Nor is the postpetition assignment of a mortgage and the related note an act to

collect a debt; the assignment merely transfers the claim from one entity to another.").

Accordingly, judgment shall be entered in favor of Claimant on this issue.

---

[35] Doc. No. 8 at 8, ¶ 52 ("The Plaintiffs further aver that any documents that purport to transfer any interest in the Note to the Trust postpetition are void as a matter of law pursuant to Sections 362(a)(4) and 549 of Title 11 of the United States Code.").

### 2. *PLAINTIFFS MAY NOT USE THE POWERS SET FORTH IN 11 U.S.C. § 544*

Plaintiffs assert that they are entitled to pursue an avoidance action pursuant to § 544(a). Section 544 is a special power created by the Bankruptcy Code. In Chapter 13 cases, this special power is granted specifically to the Chapter 13 Trustee. Furthermore, in *Lee v. Anasti (In re Lee)*, 432 B.R. 208 (Bankr. D.S.C. 2010), *aff'd* 432 B.R. 212 (D.S.C. 2010), *aff'd* __ F. App'x __, 2012 WL 29185 (4th Cir. Jan. 6, 2012), this Court adopted the approach that a Chapter 13 debtor does not have standing to assert a claim under § 544(a) because the debtor's rights and powers are limited to § 522(h).[36] *Id.* at 211; *see also Hansen v. Green Tree Serv. LLC (In re Hansen)*, 332 B.R. 8, 12-13 (10th Cir. B.A.P. 2005); *Robinson v. World Omni Fin. Corp.*, Adv. Pro. No. 10-00151-8-SWH-AP, 2011 WL 352433, at *2 (Bankr. E.D.N.C. Feb. 1, 2011); *Ryker v. Current (In re Ryker)*, 315 B.R. 664, 667 (Bankr. D.N.J. 2004); *In re Binghi*, 299 B.R. 300, 306 (Bankr. S.D.N.Y. 2003). Pursuant to these authorities, the Court finds that Plaintiffs may not pursue this cause of action under § 544 as a matter of law.

**IT IS THEREFORE ORDERED:**

1. That Plaintiffs Timothy Carl Kain and Ruth Mulfinger Kain's Motion for Summary Judgment is denied;

2. That Defendants Countrywide Home Loans, Inc., Bank of America, N.A., BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing LP, CWABS, Inc., and Mortgage Electronic Registration Systems, Inc., have no interest in or

---

[36] Section § 522(h) grants the debtor certain avoidance powers by providing:

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subjection (g)(1) of this section if the trustee had avoided such transfer, if—

    (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

    (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

liability resulting from this adversary proceeding.  Those parties did not file claims in Plaintiffs' bankruptcy case and after due notice, did not assert any right to payment under the Note or Mortgage;

3.  That the Motion for Summary Judgment filed by Claimant Bank of New York, f/k/a Bank of New York as Trustee for the Certificateholders CWABS, Inc. Asset-Backed Certificates, Series 2005-16, is granted as to all matters remaining in this adversary proceeding.  Claimant has standing and the right to enforce the Note and Mortgage, including payment of its proof of claim filed on February 10, 2009, in the amount of $182,323.36.

**AND IT IS SO ORDERED.**